# Commonwealth ex rel. Generoso Di Giacomo *v.* Heston, Superintendent of Prison.

*Habeas corpus — Imprisonment for debt — Equity — Decree to compel payment of money—Attachment for contempt—Act of July 12, 1842, P. L. 339—Appeals—Remedies.*

1. Where a suit in equity involves a dispute about partnership funds but without allegation or proof of misconduct or fraud on the part of defendant, and the parties settle their differences, and by consent the court enters a decree against defendant to pay a stated sum of money within a certain time, such decree cannot be enforced against the defendant by an attachment for contempt, inasmuch as such a decree would be in violation of the Act of July 12, 1842, P. L. 339.

2. In such case, if the defendant is imprisoned for contempt, he may petition the Supreme Court for a writ of habeas corpus, and he may also appeal.

3. In passing upon the application for the writ of habeas corpus, the record alone will be considered.

4. Attachment for contempt may issue against a trustee or against a fraudulent debtor, or against one who has been guilty of

infraction of a legal duty, if he fails to satisfy a decree against him, but a mere order for the payment of money cannot be so enforced.

Mr. Justice SIMPSON filed a dissenting opinion on the ground that an appeal was the sole remedy.

Petition for writ of habeas corpus. Miscellaneous Docket No. 5, No. 29 of Supreme Court of Pennsylvania.

*Samuel W. Salus,* for petition.

OPINION BY MR. JUSTICE SADLER, January 3, 1928:

Di Giacomo, the relator, has asked to be discharged from confinement in the county prison, to which he was committed by an equity court for failure to comply with a decree there entered. The record discloses the filing of a bill by plaintiffs, who claimed to have entered into an oral agreement of partnership with defendant, averring that funds, paid to the latter to establish a trade in soft drinks, had not been properly expended. It was alleged that part of the money so contributed was deposited by the relator in his own name, and a portion thereof used to purchase real estate and automobiles, to which he had taken title individually. An accounting was asked, as well as an order restraining disposition of the property claimed to be assets of the partnership. The answer set up that plaintiffs had purchased and advanced money in payment of stock in a proposed corporation, for which no charter had as yet been granted, though application therefor was filed, and that the defendant was prepared to turn over to it the property taken in his name, when the company was authorized to proceed. In the meantime the proposed business was conducted by him.

Before answer filed, the preliminary injunction granted to restrain the disposition of the property purchased with the contributed funds was continued, after the hearing of one witness, but permission was granted

COMMONWEALTH ex rel. DI GIACOMO v. HESTON. 65

1928.]                    Opinion of the Court.

to defendant to continue the enterprise as theretofore until final termination of the case. An examination of the only evidence taken fails to establish any fraudulent misconduct by defendant. Before final hearing the parties adjusted their differences, and, by consent, the court entered a decree directing defendant to pay, within ninety days, to the three plaintiffs, specified sums agreed on, each party to pay his own costs. No finding was made as to the accuracy of the charges of wrongdoing, as set forth in the bill filed, nor is there any declaration that the defendant was acting in a fiduciary capacity, and had misappropriated funds belonging to plaintiffs. The order was merely for the payment of moneys which it was averred were contributions to a partnership, but which defendant insisted had been transferred to him in payment of stock in a company to carry on the concern, for which as yet no charter had been granted.

In pursuance of the agreement of the parties, embodied in the decree of the court, $3,000 of the amount stipulated was paid by defendant. The balance was not liquidated within the time fixed, and, upon petition, an attachment for contempt issued. A motion to quash this proceeding was denied, and Di Giacomo was committed to the county prison. This writ of habeas corpus was then sued out, asserting the illegality of the proceeding below. An answer was filed denying defendant's right to discharge, and the validity of relator's imprisonment is the question we are now called upon to consider.

Though the exercise of the discretion of the court below in awarding or refusing an attachment prayed for is usually treated as conclusive, as it can best determine whether a contempt has been committed against its own process (Seidman's Est., 270 Pa. 465), yet this is not necessarily so: State Grand Lodge v. Morrison, 277 Pa. 41. The order committing defendant is a final one (Reap's App., 88 Pa. Superior Ct. 147), and is subject to review: Hummel & Bishoff's Case, 9 Watts 416; Com.

66 COMMONWEALTH ex rel. DI GIACOMO *v.* HESTON.

Opinion of the Court. [292 Pa.

v. Newton, 1 Grant 453. When an appeal is taken, the merits of the original decree will not be examined (Sperry & Hutchinson v. McKelvey Hughes Co., 64 Pa. Superior Ct. 57), but the supervisory power will be limited to the determination of whether the court below transcended its jurisdiction: Scranton v. Peoples Coal Co., 274 Pa. 63; Com. v. Perkins, 124 Pa. 36.

The attack on the legality of the commitment may be made by writ of habeas corpus, as here, instead of by appeal. The former procedure is not to be made a substitute for the latter (Com. v. Reifsteck, 271 Pa. 441), but the appellate court may exercise original jurisdiction and grant relief where lack of power to make the order, or sentence complained of, appears (Halderman's Petition, 276 Pa. 1; Com. v. Curry, 285 Pa. 289; Com. v. Francies, 250 Pa. 350), but not otherwise: Williamson's Case, 26 Pa. 9. And, in passing upon the application, the record alone will be considered: Com. v. Superintendent, 220 Pa. 401. The best practice, and the one usually followed, is to appeal from the judgment entered (Com. v. Cooper, 277 Pa. 554), but the question raised may be considered in appropriate cases either in that manner or on writ of habeas corpus, and both methods have been resorted to in attacking the same decree: Com. v. Perkins, supra.

The contempt charged in the present case rests on the failure of defendant to comply with the consentable decree, directing him to pay the plaintiffs certain sums of money, advanced for the formation of a partnership, as they alleged, or in payment of the stock of a corporation to be formed, according to the defendant. That the equity court has the power to commit for disobedience of orders, which it has jurisdiction to enter, cannot be the subject of question: Patterson v. Wyoming Dist. Council, 31 Pa. Superior Ct. 112. Arrest for contempt is not the infliction of punishment for a wrongful act, but is simply a means of securing compliance with a direction the court was legally authorized to make: Com.

COMMONWEALTH ex rel. DI GIACOMO *v.* HESTON. 67

1928.]                    Opinion of the Court.

v. Lewis, 253 Pa. 175. The Act of 1842, abolishing imprisonment for debt, expressly excepts contempts to enforce civil remedies, where merely directions to pay money arising from contract: Chew's App., 44 Pa. 247; Equitable Trust Co. v. Garis, 194 Pa. 435; Scranton v. Coal Co., supra. And there is no force in the suggestion made by relator here that imprisonments for such cause have been restrained by our Equity Rule 86, which provides for final process to execute decrees. The right to imprison to enforce legal orders is permitted by the statute, and could not be taken away by rule of court (Scott v. Jailer, 1 Grant 237), had it been attempted, which it was not.

The real question is whether the order in the present case was designed to compel obedience to a decree for the payment of money arising from a contract. If so, it comes within the prohibition of the Act of July 12, 1842, P. L. 339, which provides: "No person shall be arrested or imprisoned on any civil process issuing out of any court......in any suit or proceeding instituted for the recovery of any money due upon any judgment or decree founded upon contract, express or implied, or for the recovery of any damages for the nonperformance of any contract, excepting in proceeding, as for contempt, to enforce civil remedies, action for fines or penalties, or on promises to marry, on moneys collected by any public officer, or for any misconduct or neglect in office, or in any professional employment," and relator is entitled to a discharge.

"The general words of this statute embrace decrees in equity, as well as judgments at law, in all cases where the judgment or decree is for the payment of money, due on a contract. But the question arises whether the exception in favor of 'proceedings as for contempt to enforce civil remedies,' embraces constructive contempts, arising from the nonpayment of money due on a contract, after the amount has been ascertained by a decree in equity. The words of the exception might, it is true,

68 COMMONWEALTH ex rel. DI GIACOMO *v.* HESTON.

Opinion of the Court.          [292 Pa.

be construed to embrace such cases. But we must not lose sight of the main object of the statute, which was to relieve from imprisonment in all cases where no offense appears except that of omitting to pay money due on a contract. That omission may be as likely to arise from inability and misfortune as from perverseness. Where there is no evidence of fraud, in disobeying the decree, there is no contempt at all, within the meaning of the exception": Scott v. Jailer, supra, p. 238.

The class of cases excluded from the protection of the Act of 1842 is explained in Chew's App., 44 Pa. 247, where it was decided that a court of equity may issue an attachment against a trustee, as for contempt, who refuses to pay money in obedience to a decree founded upon the trust estate in his hands, since such is not based on a contract, express or implied, in the ordinary sense of that word, but is an obligation growing out of a duty which the law imposes. As was said in Morrison v. Blake, 33 Pa. Superior Ct. 290, where the commitment of a fiduciary was sustained, and the effect of the Act of 1842 fully discussed: "The law of the land prescribes certain duties that must be performed by every man who undertakes to place himself in the position to which the discharge of these [trust] duties has been attached. His obligation to perform them arises not from the union of his will with that of another individual like himself, but from the mandate of the law. Hence, such obligation is, strictly speaking, legal rather than contractual, and his refusal to perform may be fairly and properly termed an infraction of a legal duty and not merely a breach of contract." A trustee who fails to pay over the funds entrusted to his care, is subject to attachment for contempt, as is an executor (Tome's App., 50 Pa. 285), or guardian: Leiter's App., 10 W. N. C. 225. Where there has been fraud, or a breach of trust is involved, and fraudulent conduct on the part of defendant appears, the attachment may be issued, but this is not so where these elements are not found to be

COMMONWEALTH ex rel. DI GIACOMO v. HESTON. 69

1928.] Opinion of the Court.

present: McCarrell v. Mullins, 141 Pa. 513; Seidman's Est., supra.

As was said in Wilson v. Wilson, 142 Pa. 247: "It may be conceded that an order for the payment of money, without more, would not subject the party, against whom such order is made to the process of attachment." So, it was held that a partner, directed to account for a definite sum due, and pay costs, could not be punished for contempt in failing to comply with the latter part of the decree: Pierce's App., 103 Pa. 27. It was there said, where the parties bore a similar relation to that found in the case at bar: "Manifestly the decree is founded upon a contract express or implied between the parties." Likewise, where defendant was ordered to return certain deeds and pay money due under a violated contract, this court said he could not be committed for failure to pay, using this language: "The only part of [the decree] which remained unperformed, was that which required the payment of the money due on the contract and the costs. For this, and this alone, the relator was committed to prison. Where the record shows that the imprisonment is for this purpose alone, and that no other contempt was alleged or adjudicated, the process of imprisonment is void, and may be disregarded, on habeas corpus, as furnishing no sufficient cause of detainer": Scott v. Jailer, supra, p. 239. A similar determination was reached in Colburn v. Colburn, 279 Pa. 249, when the court decreed the specific performance of an agreement of separation, and directed the payment of a sum then owing, and the ruling of the court below, that attachment would not lie, was affirmed.

In the instant case, the decree of the court was based on a bill which averred the existence of an oral contract of partnership, and a failure of the one actually carrying on the business to account for moneys due, further alleging funds were improperly expended by the one to whom the advances were made. There was no evidence

70 COMMONWEALTH ex rel. DI GIACOMO *v.* HESTON.

Opinion of the Court—Dissenting Opinion. [292 Pa.
or finding showing relator was guilty of the fraud charged. The parties voluntarily agreed, before final hearing, to adjust their differences, determining the amount due to each of the plaintiffs, and, by consent, it was decreed that the defendant should pay these respective amounts. There is no adjudication to show that relator was other than a debtor for the sums fixed under the obligation arising from his oral agreement. Though the bill averred misconduct as a partner, the truth of such allegation is not made the basis of the decree, which at most is a direction to account for the sums due under the express contract between the parties, which brings the case within the ruling in Pierce's Appeal, supra. The defendant was therefore protected from arrest, by the terms of the Act of 1842, for failure to comply with the consentable order directing him to make payment, and was unlawfully committed to the county prison when he became in default. He is, therefore, entitled to present release.

Relator discharged.


DISSENTING OPINION BY MR. JUSTICE SIMPSON:

As I view it, the fundamental error of the majority consists in failing to distinguish between a lack of jurisdiction in the court below, and its alleged error in making the orders of which appellant complains. In the original proceeding, that court had jurisdiction of both person and subject-matter, for relator was summoned and appeared to the action, which that tribunal had express statutory authority to hear and determine. So, also, it had jurisdiction over both the person and subject-matter of the proceedings resulting in commitment, for this, in a proper case, is but an incident to the original action. So, too, it had jurisdiction over both the person and subject-matter of relator's right to a discharge from the commitment, and he, himself, so recognized when he applied for the rule to show cause why it should not be set aside, because of the court's alleged

COMMONWEALTH ex rel. DI GIACOMO v. HESTON. 71

1928.]                    Dissenting Opinion.

error in attaching him for contempt of its decree. The jurisdiction below being established, and indeed admitted by the majority, relator's remedy for any error made is by an appeal from the order of commitment and the refusal to discharge him therefrom; and that course he has taken, the appeal being now pending in this court. Until those orders are reversed they are res adjudicata of every question which was or could have been raised, and public policy forbids further litigation on the points decided: State Hospital for Criminal Insane v. Consolidated Water Supply Co., 267 Pa. 29. We have said that habeas corpus cannot properly be made a substitute for a writ of error: Com. v. Reifsteck, 271 Pa. 441; Scranton v. Peoples Coal Co., 274 Pa. 63; Haldemann's Petition, 276 Pa. 1. To me it seems clear that, if ever that doctrine ought to be applied, it should be here. In this day and generation, litigants should know that they cannot rightfully contest the same question over and over again, first in one court and then in another (instead of appealing from the orders of the first tribunal), and so on indefinitely until all the courts are exhausted, (possibly in more senses than one), and then, mayhap, begin all over again because of their right, in proper cases, to be discharged on habeas corpus. We have said that a relator is not entitled to such a writ in the first instance, merely for the asking; we have never heretofore said that, if it was allowed, as here it was, it must result in relator's discharge, if we disagree with the view of the law taken by the court below, especially where, as here, that course will violate wise and well settled legal principles, applicable to all proceedings, and which, never more than now, should be steadily adhered to. I would refuse the discharge of relator, leaving him to prosecute his pending appeal, with the right to apply therein for a supersedeas, if he shall be so advised.